STATE OF NORTH CAROLINA v. JAMES SANDERS

No. 777SC174

(Filed 21 September 1977)

**Constitutional Law § 40— right to counsel—non-indigent defendant—appearance without counsel**

Defendant was not denied his constitutional right to counsel at his preliminary hearing, two aborted trials or the trial at which he was convicted where a district court judge advised defendant of his right to have counsel and that counsel would be appointed if defendant were found to be indigent, and defendant informed the judge that he would employ his own attorney; defendant thereafter filed an affidavit of indigency and a request for appointment of counsel, but the district court found that defendant was not an indigent and denied the request; a probable cause hearing was held and defendant was bound over to superior court; after an indictment was returned, defendant was again advised of his right to appointed counsel; defendant filed another affidavit of indigency and request for appointment of counsel, and a superior court judge found that defendant was able to employ counsel and denied the request; defendant

thereafter appeared *pro se* at his two aborted trials and the trial at which he was convicted; and the record supports the determinations that defendant was not indigent, it being clear that defendant was made fully aware of his rights, that he was not entitled to appointed counsel because he was not indigent, and that it was defendant's decision not to employ counsel.

Judge MARTIN dissenting.

APPEAL by defendant from *Cowper, Judge*. Judgment entered 19 October 1976 in Superior Court, NASH County. Heard in the Court of Appeals 28 June 1977.

Defendant was tried and convicted upon a charge of nonfeloniously receiving stolen goods. Judgment of imprisonment for a period of two years was entered.

*Attorney General Edmisten by Special Deputy Attorney General Myron C. Banks for the State.*

*L. G. Diedrick for the defendant.*

BROCK, Chief Judge.

Defendant strenuously argues that he was denied his constitutional right to be represented at trial by counsel. The following sequence of events appears from the record on appeal.

In January 1976 one Keith Clark offered to sell defendant a color television set for $125.00. Defendant agreed to the price and told Clark to meet him at his (defendant's) house. Clark and one John Lee Batchelor drove to a house near Frazier's Crossroad, broke and entered the house and stole a Zenith color television set. They then drove to defendant's house where the sale for $125.00 was consummated. Clark told defendant the television set "came out of a poker house and [Clark] didn't think anybody would find out about it." Defendant said "as long as it didn't come out of anybody's house he was not worried about it." The television set was recovered from defendant's house and defendant was arrested on 21 April 1976. On 22 April 1976 defendant posted a $500.00 appearance bond. On 23 April 1976 defendant appeared before District Court Judge Carlton without counsel. Defendant was advised by Judge Carlton of his right to have counsel and that counsel would be appointed if defendant were found to be indigent. Defendant advised the judge that he would employ his own attorney.

On 29 June 1976 defendant filed an affidavit of indigency and requested appointment of counsel. His affidavit indicated that he was regularly employed, earning $100.00 per week; that he was mar-

State v. Sanders

ried and his wife's income was unknown; that he owned a home in Spring Hope; that he owned a 1969 Plymouth; and that he owed a total of $728.00. Judge Matthews found on 29 June 1976 that defendant was not indigent and denied the request for appointment of counsel. On 6 July 1976, after a probable cause hearing, defendant was bound over to Superior Court for trial and his $500.00 appearance bond was continued.

On 9 August 1976 an indictment was returned charging defendant with breaking and entering, and larceny. On 10 August 1976 defendant filed in superior court another affidavit of indigency and requested the appointment of counsel. This affidavit indicated that defendant was unemployed (having been laid off the previous week); that he was married and his wife's income was unknown; that he was buying a home in Spring Hope upon which he paid $500.00 to $600.00 per month; that he was buying a 1969 Plymouth upon which he paid $40.00 per month. After a hearing upon this affidavit and request the superior court judge ruled that defendant was not indigent and denied appointment of counsel.

On 27 September 1976 defendant was called for trial upon the indictment charging breaking and entering, and larceny. Defendant appeared *pro se* and entered a plea of not guilty. After a jury was selected and empaneled the trial court of its own initiative declared a mistrial. On the same day (27 September 1976) the grand jury returned a bill of indictment purporting to charge defendant with breaking and entering, larceny, and receiving. On 28 September 1976 defendant appeared *pro se* and entered a plea of not guilty. After a jury was selected and empaneled the trial court of its own initiative quashed the 27 September 1976 bill of indictment.

On 18 October 1976 the grand jury returned a bill of indictment, proper in form, charging defendant with breaking and entering, larceny, and receiving. Defendant again appeared *pro se* and entered a plea of not guilty. Defendant was placed on trial only upon the charge of receiving stolen goods. This is the charge of which he was convicted. Acting in his own behalf defendant gave notice of appeal and an appearance bond of $5,000.00 was ordered on 19 October 1976. On 22 October 1976 defendant posted the $5,000.00 appearance bond. Also on 22 October 1976 defendant posted a $300.00 appeal bond. Defendant appears in this Court through privately retained counsel.

Defendant argues that he was denied his constitutional right to counsel at the probable cause hearing; at the 27 September 1976

aborted trial; at the 28 September 1976 aborted trial; and at the 18 October 1976 trial which resulted in his conviction. It is defendant's position that it was incumbent upon the presiding judge on each of these occasions to advise defendant of his right to appointed counsel and to conduct a hearing upon his financial ability to employ counsel.

The theory argued by defendant would cause a never ending course of hearings upon a defendant's financial ability to employ counsel. Obviously, before the probable cause hearing defendant was advised of his right to have appointed counsel. Defendant filed an affidavit and request. After hearing upon the request it was determined that defendant was able to employ counsel and the request was denied by the district court judge. After a bill of indictment was returned by the grand jury in superior court it is obvious that defendant was again advised of his right to appointed counsel. He again filed an affidavit and requested appointment of counsel. After hearing upon this second request it was again determined that defendant was able to employ counsel and the request was denied by the superior court judge. With this clearly established knowledge of his right to have counsel appointed if defendant were indigent, defendant made no further undertaking to establish indigency, if indeed he could have established it. He chose to proceed *pro se* at the two aborted trials and chose to proceed *pro se* at the trial resulting in this conviction. Defendant's ability to post a $500.00 appearance bond the day after his arrest retained his freedom throughout the trial proceedings. That circumstance plus defendant's ability, upon conviction, to post a $300.00 appeal bond and a $5,000.00 appearance bond lends substantial credence to the findings that defendant was not indigent.

In this case the defendant was advised of his right to have appointed counsel, and upon his request for appointed counsel defendant was found not to be indigent once in the district court and again in the superior court. Under these circumstances we think defendant was made fully aware of his rights. He was not entitled to appointed counsel because he was not indigent. It was defendant's decision not to employ counsel. The State has in no way deprived defendant of his right to counsel.

We have examined defendant's remaining assignments of error and conclude that they are without merit.

No error.

State v. Sanders

Judge HEDRICK concurs.

Judge MARTIN dissents.

Judge MARTIN dissenting.

Defendant's position can be properly appreciated only through a keen awareness of the chronology of events:

| | |
|---|---|
| 22 April 1976: | Initial appearance—magistrate's order |
| 23 April 1976: | First appearance before district judge—the only point at which the record affirmatively reveals that defendant was advised of right to counsel and right to appointment of counsel if indigent |
| 29 June 1976: | First affidavit of indigency and request for appointment of counsel—denied by district court judge |
| 6 July 1976: | Probable cause hearing—found probable cause as charged |
| 9 August 1976: | First indictment returned |
| 10 August 1976: | Second affidavit of indigency and request for appointment of counsel—denied by superior court judge |
| 27 September 1976: | Defendant called for trial—jury empaneled, mistrial declared |
| 27 September 1976: | Second indictment returned |
| 28 September 1976: | Order entered quashing bill of indictment and declaring mistrial |
| 18 October 1976: | Third indictment returned |
| 18 October 1976: | Defendant arraigned, tried and convicted without assistance of counsel |

Defendant contends that he was denied his constitutional right to counsel at several junctures, most important of which is the 18 October proceedings during which defendant was arraigned, tried and convicted without the assistance of counsel. The record of same date is completely barren of any indication that the trial court informed defendant of his right to counsel or sought to determine

whether the lack of counsel resulted from indigency or choice. In general, the majority concludes that the defendant was not indigent and that the trial court's failure to inform defendant of his right to counsel or to inquire into his indigency was excused in that defendant was fully aware of his rights and by not requesting counsel *chose* to proceed *pro se*. In essence, the majority finds that defendant voluntarily waived his constitutional right to the assistance of counsel. With this I cannot agree.

It is familiar learning that the Sixth Amendment guarantees the right of an indigent defendant in a criminal prosecution to the assistance of counsel. This fundamental right is made obligatory upon the States by the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 9 L.Ed. 2d 799, 83 S.Ct. 792 (1963). Underscoring the necessity of counsel to the assurance of a fair trial, the United States Supreme Court held in *Argersinger v. Hamlin*, 407 U.S. 25, 32 L.Ed. 2d 530, 92 S.Ct. 2006 (1972), that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at trial." 407 U.S. at 37, 32 L.Ed. 2d at 538. In response to this constitutional mandate, we have undertaken by case law and statutory enactment to insure the right to counsel and the right to the appointment of counsel if indigent. *State v. Cradle*, 281 N.C. 198, 188 S.E. 2d 296 (1972); G.S. 7A-450-51; G.S. 15A-942.

In the case at bar, the sole issue upon which the majority and I differ in opinion is whether the defendant voluntarily and intelligently waived his right to counsel on 18 October by not requesting counsel and filing another affidavit of indigency. On the facts of this case it would require reaching and stretching to conclude that defendant's appearance without counsel on 18 October constituted a *voluntary* choice to proceed *pro se*. The record affirmatively reveals at only one point (23 April 1976), during six months of proceedings and at least seven appearances in court without counsel, that defendant was advised of his right to counsel and right to appointed counsel if indigent. Defendant's desire for counsel is indicated by the two affidavits of indigency he filed. Moreover, defendant's affidavit of 10 August strongly indicates that he was "financially unable to secure legal representation and to provide all other necessary expenses." G.S. 7A-450(a). A significant change in defendant's financial condition had occurred between the time of his first affidavit of indigency on 29 June and the second affidavit of indigency filed 10 August. Defendant had lost his job, had no income

and no money, and had apparently mortgaged his 1969 Plymouth. Nothing in the record refutes or contradicts the import of defendant's affidavit of indigency. Notwithstanding this showing, defendant was found, after "due inquiry," to be financially able to provide the necessary expenses of legal representation and was accordingly denied appointed counsel. In my opinion, the failure to assign counsel was error. *State v. Cradle, supra.* Concededly, this error did not manifest itself in prejudice to the defendant at the aborted trial of 27 September. However, it can be reasonably argued that the improper denial of counsel at this juncture frustrated defendant's further efforts to obtain appointed counsel which is evidenced by his failure to file another affidavit of indigency and request for counsel on 18 October.

G.S. 7A-450(c) specifically provides that the question of indigency may be determined or redetermined by the court at any stage of the action. See *State v. Hairston*, 280 N.C. 220, 185 S.E. 2d 633 (1972). The substantial change in defendant's financial condition evinced by his 10 August affidavit when combined with the fact that more than two months had transpired since that determination made further inquiry into defendant's indigency on 18 October essential to any finding of a voluntary waiver of counsel. On these matters the record is silent. "[I]t is . . . important for the trial judge to determine in the first instance the question of indigency and for the record to show whether the lack of counsel results from indigency or choice." *State v. Morris*, 275 N.C. 50, 60, 165 S.E. 2d 245, 251 (1969). Further, the record must show that an indigent accused appearing without counsel was offered counsel and voluntarily and intelligently refused the same. Anything less is not a waiver. *State v. Morris, supra; State v. McClam*, 7 N.C. App. 477, 173 S.E. 2d 53 (1970).

Finally, the majority complains that the theory argued by the defendant would cause a never ending course of hearings upon a defendant's financial ability to employ counsel. However, the record reveals that the numerous appearances of the defendant were not through any fault of his own, but rather were due to the failure of the district attorney to properly prepare a bill of indictment. It may be worthy of note that the offense upon which the defendant was finally convicted was never properly charged until the day of his trial. During the several months of proceedings, defendant was brought into court no less than seven times; and during this time he lost his job, had to mortgage his automobile, and apparently fell in arrears in making the payments on a home jointly owned by defend-

ant and his wife. Defendant's situation illustrates one of the very reasons for which there exists a statutory provision allowing the question of indigency of a defendant to be determined or redetermined by the court at any stage of the proceeding at which an indigent is entitled to representation. G.S. 7A-450(c). See *State v. Hoffman*, 281 N.C. 727, 190 S.E. 2d 842 (1972).

I cannot agree that defendant's failure to make any further attempt to establish his indigency following the 10 August determination established his choice to proceed *pro se* at the subsequent court proceedings. The better reasoned conclusion is that the court's refusal to appoint counsel on 10 August upon the strong showing made by defendant thwarted any further efforts by him to establish his indigency. As a layman, defendant may well have perceived that any further remonstration on his part would be futile. This brand of inaction falls far short of a voluntary waiver of counsel. For the reasons indicated, I vote for a new trial.